178 So. 493

STATE v. CLEMENT et al.
No. 34628.

Jan. 10, 1938.

Carroll Montet, of Thibodaux, for relators.

Aubert L. Talbot, Dist. Atty., of Napoleonville, for the State.

ODOM, Justice.

Herman Clement, Emile Panvelle, Eddie Panvelle, and Junius Landry were convicted of violating the provisions of Act No. 130 of 1936. Separate bills of information were filed against them, and their cases are consolidated in this court.

The specific charge made against Herman Clement is that:

"[He] did wilfully and unlawfully go upon swamp lands, not in cultivation, in Township 13, South range 15 East, situated in the Parish of St. James, owned by Burton and Schwartz Cypress Co. and set traps thereon, without the consent of said

owner, or Francis Waguespack the lessee of said lands, or any authorized agent of the owner or lessee for the purpose of catching, capturing, trapping, taking and ensnaring fur bearing animals for its skin, pelt, hide or fur."

The charges brought against Emile and Eddie Panvelle and Junius Landry are identical with the above, except in their cases the land upon which the trespass was committed is owned by the Bowie Lumber Company.

The defendant in each case filed in limine a motion to quash the indictment, on the ground that Act No. 130 of 1936 is unconstitutional. The motion was overruled. The defendants were convicted, and, after conviction and before sentence, a motion in arrest of judgment was filed; the ground of the motion being that the act is unconstitutional. This motion was also overruled, and the defendants were fined.

They brought their cases to this court on writs of prohibition, mandamus, and certiorari.

Section 1, Act No. 130 of 1936, p. 394, provides:

"That it shall be unlawful for any person or persons to go upon marsh or low prairie lands, or swamp lands, not under cultivation, belonging to another and situated in this State, (including lands of the same character belonging to the State of Louisiana or any of its political subdivisions or over which the State of Louisiana or such subdivisions exercise jurisdiction or control), without the consent of the owner thereof or of one authorized to grant such consent, and there to capture, catch, trap, or take or ensnare any fur-bearing animal for its skin, pelt, hide or fur; to attempt, by the location or marking of trap lines, or the setting of traps on such lands, or the running or examination of traps already set thereon, to commit, or be upon such lands for the purpose of committing any such act or acts, or to procure, counsel, command, aid, assist or abet another to commit or to attempt to commit any such act or acts, or to conspire with another for any of such purposes."

That section of the act contains the following proviso:

"Provided that none of the provisions of this Act shall apply to hunting with rifle or gun or to any lands whose boundaries are wholly one hundred and fifty miles or more distant from the shore line of the Gulf of Mexico at high tide."

The ground on which the validity of the act is attacked is that it violates article 4, section 4, clause 18, and article 4, section 6, of the State Constitution.

Section 4, article 4, of the Constitution prohibits the legislature from passing any local or special law on certain specified subjects, one of which is "concerning any civil or criminal actions." Clause 18.

There is no merit in the argument that the act violates this provision of the Constitution. See State v. McCue, 141 La. 417, 75 So. 100.

Section 6, article 4, prohibits the Legislature from passing any local or special

law "not enumerated in Section 4 of this article, unless notice of the intention to apply therefor shall have been published, without cost to the State, in the locality where the matter or things to be affected may be situated."

Notice of intention to apply for the passage of this act was not published.

It was held in State v. Hebert et al., 179 La. 190, 153 So. 688, that persons entering upon uninclosed swamp land without the consent of the owner, for the purpose of trapping, were not guilty of the penal offense of trespassing as denounced by section 822 of the Revised Statutes, as amended by Act No. 162 of 1910. The Legislature of 1936, realizing no doubt that owners of marsh or swamp lands not under cultivation were entitled to protection against those who might be disposed to enter upon them for the purpose of trapping furbearing animals, adopted Act No. 130. That act makes it unlawful for any person to go upon marsh, low prairie, or swamp lands, not under cultivation, belonging to another, and there to capture, trap, or catch any fur-bearing animal for its skin, pelt, hide or fur, without the consent of the owner or one authorized to grant such consent.

While the title and the first part of section 1 of the act indicate that its provisions were intended to operate in all sections of the state where marsh or swamp lands, not under cultivation, are located, there is included in section 1 a clause which restricts its operation to a certain locality. We refer to the last clause of section 1, which reads as follows:

"Provided that none of the provisions of this Act shall apply to hunting with rifle or gun *or to any lands whose boundaries are wholly one hundred and fifty miles or more distant from the shore line of the Gulf of Mexico at high tide.*" (Italics are the writer's.)

This act was not passed to protect the fur-bearing animals of the state and therefore was not intended to be a conservation measure. Fur-bearing animals are protected by special laws.

The evident purpose of the act, as indicated by both its title and its body, was to protect the rights of those who own swamp or marsh lands, not under cultivation. "Wild beasts, birds, and all the animals which are bred in the sea, the air, or upon the earth," belong to nobody, but "do, as soon as they are taken, become instantly by the law of nations, the property of the captor." The owner or proprietor of land does not own the wild animals which inhabit it. Civil Code, arts. 3412, 3413, 3414, 3415. Esmele v. Violet Trapping Company, 187 La. 728, 175 So. 471.

But the right to capture, and thereby reduce to possession and ownership, the wild animals which are bred on and inhabit land, belongs primarily to the owner of the land. Article 3415 of the Civil Code, after saying that wild beasts, birds, or animals become, as soon as they are taken, the property of the captor, further says:

"But the proprietor of a tract of land may forbid any person from entering it for the purpose of hunting thereon."

Rosenthal-Brown Fur Company v. Jones-Frere Fur Company, 162 La. 403, 110 So. 630; Curran v. Jones, 163 La. 579, 112 So. 492.

And this right has become, within the last few years, a highly valuable one due to the development of the fur industry in this state, and the purpose of Act No. 130 of 1936 was to protect landowners in the exercise of that right.

Now the question is whether the act is a "local law" within the meaning of the Constitution. If it is, it is invalid because notice of intention to apply for its passage was not published.

The lands mentioned in the act are "marsh or low prairie lands, or swamp lands." We take judicial cognizance of the geography and topography of this state. We know that there are low swamp lands in almost every section of the state, and it is a matter of common knowledge that fur-bearing animals of some kind breed upon and inhabit all such lands. We have before us "Bulletin No. 18," entitled "The Fur Animals of Louisiana," published by the Department of Conservation. It shows at pages 58 and 59 that for the season 1929–1930 trapping licenses were issued to individuals living in every parish of the state—not a single exception. For trapping in East Carroll there were issued 173 licenses, for West Carroll 44, for Morehouse 252, for Union 84, for Claiborne 41, for Webster 109, for Bossier 123, and for Caddo 114. These parishes are all in the extreme northern portion of the state, each bordering on the state of Arkansas, and

we take judicial cognizance of the fact that they are more than 150 miles from the shore line of the Gulf of Mexico at high tide. The same is true of probably half the other parishes of the state.

Now the owners of marsh or swamp lands not under cultivation, located more than 150 miles from the shore line of the Gulf of Mexico at high tide, have the same problems as to trespass confronting them, and certainly have the same rights to protect, as those who own lands of similar character and valuable for the same reason, located within 150 miles of the Gulf of Mexico. The protection intended to be afforded by the act is the landowners' lawful right to use his own land for trapping purposes, and that right, as we have said, has within recent years become a very valuable one.

The act relates to a designated class of lands—marsh or low prairie or swamp lands—and the persons affected are the owners of such lands, and, as we have said, this designated class or character of lands is found, to some extent at least, in all sections of the state. The subject of the act is a class of lands, a class of citizens.

It will hardly be disputed that any statute which does not operate equally upon all of a designated class of property or citizens of the state; which, on account of its restrictions, can touch but a portion of the designated class of property, but a fraction of the designated class of citizens of the state, is a local and not a general law.

The following quotations are from 5 Words and Phrases, First Series, pp. 4208, 4209, under the caption "Local Law":

1. "A law is special or local, as contradistinguished from general, which embraces less than the entire class of persons or places to whose condition such legislation would be necessary or appropriate having regard to the purpose for which the legislation was designed. A law which so particularizes, and by such means is restricted in its operation to persons or places which do not comprise all the objects which naturally belong to the class, is special or local."

2. "Local or special laws are all those that rest on a false or deficient classification. Their vice is that they do not embrace all the class that they naturally embrace. They create preference and establish inequality. They apply to persons, things, and places possessed of certain qualities or situations, and exclude from their effect other persons, things, or places which are not dissimilar in this respect."

3. "An act is local when the subject relates to a portion only of the people or their property, and may not, either in its subject, operation, or immediate necessary results affect the people of the state, or their property in general."

In the leading case of State v. Dalon, 35 La.Ann. 1141, Chief Justice Bermudez, organ of the court, made use of the following quotations from decisions by courts of other jurisdiction:

" 'The word *local*, as applied to a bill, to an act, to a law, means such bill, act, or law, as touches but a portion of the territory of the State, a part of its people, a portion of its citizens.

" 'An Act is local within the meaning of the Constitution, which in its subjects, relates to but a portion of the people of the State, or to their property, and may not, either in its subject, operation, or immediate and necessary results, affect the people of the State, or their property in general.' People v. Supervisors, 43 N.Y. 10, 16; see, also [Clark v. City of Janesville] 10 Wis. [136, at] page 178; [Sickles v. Gloucester Mfg. Co.] 4 Blatchf. [229], 236 [Fed. Cas. No. 12,841]; [State ex rel. Cothern v. Lean], 9 Wis. 279; [People ex rel. Klokke v. Wright] 70 Ill. [388], 398. * * *

" 'The number of persons upon whom the law shall have any direct effect, may be very few, by reason of the subject to which it relates, but it must operate equally and uniformly upon all brought within the relations and circumstances for which it provides.' People ex rel. Miller v. Cooper, 83 Ill. 585, at page 589."

In the Dalon Case, the constitutionality of Act No. 98 of 1880 was assailed on the ground that it was a local or special law and that no notice of intention to apply for the passage of the act had been published. That act, the court said, was one:

"To organize the Criminal District Court for the Parish of Orleans, as established by Article 130 of the Constitution, by providing for and regulating the machinery indispensably necessary to put that Court in motion, and thus preserve public order and general welfare and tranquility. It

has no private or local good in view, but aims solely at the enforcement of the laws enacted for the prevention and punishment of crime."

The validity of the act was upheld because, as said by the court:

"It is a public, a general act, which regulates the common good of each and every member of the human family within the limits of the State."

And:

"A review of the authorities leads to the irresistible conclusion that the Act in question, which is in character one eminently public and conservative of individual security and general welfare, and which was essential for the discipline of a judicial organization created by the Constitution and for the administration of criminal justice in the most important subdivision of the State, does not fall under the ban of constitutional proscription, and is therefore, constitutional and valid, and must be enforced."

Act No. 130 of 1936 conferred a particular benefit or right upon the owners of lands of a designated class located within prescribed territorial limits of the state, and leaves the owners of lands of the same designated class in other portions of the state without such benefit or right. Clearly this is a discrimination in favor of private individuals—landowners—who happen to own marsh or swamp lands located within the favored locality. The act does not apply to all the uncultivated swamp or marsh lands of the state.

All the lands of the state are not marsh or swamp in character. The classification of lands established by the act is not unreasonable because many of the fur-bearing animals of the state breed on and inhabit only lands of the character designated—i. e., marsh or swamp lands. There are many persons who own lands which do not fall within the classification created and who could not, for that reason, be affected by the act, even if its provisions covered the state as a whole. If the act related to all the marsh or swamp lands of the state, wherever located, it would not necessarily be a local act merely because some lands of the state of a different character would not be affected.

An act, by reason of the subject to which it relates, may affect but few of the citizens or but a fraction of the property of the state and still may not fall within the classification of "local or special law" within the meaning of the Constitution.

General laws are such as "operate equally and uniformly upon all brought within the relations and circumstances for which it provides" or "operate equally upon all of a designated class founded upon a reasonable and proper classification."

A local or special law is one which, because of its restrictions, can operate upon or affect only a portion of the citizens, a fraction of the property embraced within the classification created.

In City of Shreveport v. Nejin, 140 La. 785, 73 So. 996, and in State v. Nejin, 140 La. 793, 74 So. 103, 107, the defendant

was prosecuted for operating a "blind tiger," as defined by Act No. 8 of 1915, Ex. Sess., p. 15. Section 1 of that act defines a "blind tiger" to be "any place *in those subdivisions of the State where the sale of spirituous, malt or intoxicating liquors is prohibited,* where such spirituous, malt or intoxicating liquors are kept for sale," etc. (Italics are the writer's.)

The validity of the act was assailed in each of the cases on the ground that it was a local or special law and that it discriminated against persons in dry and in favor of those in wet territory.

By its terms that act could have effect only in those parts of the state where the sale of spirituous or malt liquors was prohibited. It was argued that, because of this restriction, the act was a local or special law. This court upheld the act in each of the cases, on the ground that its provisions affected equally and alike all of the citizens of the state who came within its provisions and were therefore similarly situated; that the act affected alike all those portions or districts of the state where the sale of intoxicants had been or might later be prohibited. In State v. Nejin, the court said:

"The statute applies in every organized community in the state where, in the exercise of the right of local option, the people have prohibited the sale of liquor, and is applicable to every other community, in the sense that, should any other choose to prohibit such sale, it will come immediately under its dominion. It is not therefore either a special or a local law within the meaning of either of the articles invoked."

See State v. Donato, 127 La. 393, 53 So. 662.

In State v. McCue, 141 La. 417, 75 So. 100, the defendant was prosecuted for violating the provisions of Act No. 14 of 1916, which made it unlawful to sell or keep for sale any malt liquors, whether intoxicating or not, in any parish, ward of a parish, city, town, or village where the sale of intoxicating liquors was prohibited by law. The act was attacked on the ground that it was a local law. The court upheld the act, following the rulings made in the Nejin and Donato Cases.

In Clark v. City of Opelousas, 147 La. 1, 84 So. 433, an attack was made on Act No. 136 of 1898, which is a general act "For the creation and government of municipal corporations throughout the State," on the ground that it was a local or special act. The act was held constitutional (on rehearing) because, according to its provisions, every municipal corporation in the state (New Orleans excepted) was allowed the privilege of abandoning its special charter and adopting the act, and, if adopted, its provisions affected alike all the municipalities in the state, wherever located. The court assigned as its reasons for upholding the act the rulings in the Donato, Nejin and McCue Cases.

In State ex rel. Porterie v. Smith, 184 La. 263, 166 So. 72, the court sustained Act No. 22 of 1934, 3d Ex.Sess., as against the charge that it was a local law. But in the course of its opinion, it said:

"The act operates equally and uniformly upon all brought within the relations and circumstances for which it provides."

In the Donato, Nejin, and McCue Cases, it was pointed out that the acts assailed could, according to their terms, have effect in only certain designated portions of the state—that is, in so-called prohibition territory. And the reason the acts were upheld was that they affected equally and alike all those persons residing in such designated territory wherever located in the state. In other words, each of the acts operated "equally and uniformly upon all brought within the relations and circumstances for which it provides." (See quotation used in State v. Dalon and the language of this court in State ex rel. Porterie v. Smith, supra.)

If Act No. 130 of 1936 operated equally and uniformly in all those sections of the state where there are marsh or swamp lands, it would not be a local or special law. But it does not. By its terms none of its provisions "shall apply * * * to any lands whose boundaries are wholly one hundred and fifty miles or more distant from the shore line of the Gulf of Mexico at high tide."

Clearly the act violates article 4, section 6, of the Constitution.

For the reasons assigned, Act No. 130 of 1936 is declared unconstitutional and void. The motion to quash the indictments in all these cases is sustained, the convictions and sentences are set aside, and it is ordered that the defendants be released.

O'NIELL, C. J., concurs in result.

FOURNET, J., concurs in the decree.