221 So.2d 534 (1969)
CITY OF NATCHITOCHES et al., Plaintiffs-Appellants,
v.
STATE of Louisiana et al., Defendants-Appellees.
No. 2704.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1969.
Rehearings Denied May 7, 1969.
*537 Watson, Brittain & Murchison, by Arthur C. Watson, Natchitoches, for plaintiffs-appellants.
Sanders, Miller, Downing & Kean, by R. Gordon Kean, Jr., Baton Rouge, John R. Hunter, Jr., Alexandria, Peters, Ward, Johnson & Phillips, by Patrick Phillips, Shreveport, for defendant-appellee.
En Banc.
PER CURIAM.
This is a suit for declaratory judgment and for an injunction. For the reasons to be stated below:
(1) We reject attacks on the constitutionality of Louisiana Acts 55 and 57 of the Extraordinary Session of 1968, increasing the minimum pay and vacations of local firemen.
(2) We hold that LSA-R.S. 33:1997, as amended in 1962 (providing criminal penalties against local officers who permit violations of the firemen's minimum-pay statutes), is unconstitutional, null and void, in that it fails to satisfy the requirement of due process of law as provided in Article 1, Section 2, of the Louisiana Constitution, and the fifth *538 and fourteenth amendments of the United States Constitution.
(3) We remand to permit issuance of an injunction prohibiting criminal prosecution of these municipal officers under LSA-R.S. 33:1997.
Introductory Statement
The plaintiffs are the City of Natchitoches and its Mayor and City Commissioners. The essential prayer of their petition is for a declaration that Louisiana Acts 55 and 57 of the Extraordinary Session of 1968 are unconstitutional. The plaintiffs also pray that a section of the revised statutes last amended in 1962 be declared invalid insofar as interpreted to provide criminal penalties for local officers if they permit local firemen to be paid less than required by the 1968 state laws. Additionally, the petition prays for injunction against threatened enforcement of the criminal sanctions against the plaintiff municipal officers for noncompliance with the 1968 statutes.
Made defendants are the State of Louisiana and several local officials charged with enforcement of the State's criminal laws. Other parties intervened, as will be set forth below. Exceptions were filed by some of the interveners, and also by the State of Louisiana, defendant.
The trial court dismissed the suit. It sustained a plea filed by the State of Louisiana that the courts are without jurisdiction to hear the suit in the absence of an allegation that the state legislature has waived the state's immunity from suit. The plaintiffs appeal.
Motion to Dismiss Appeal
The State has filed a motion to dismiss this appeal. The State contends the appeal is moot because, after the trial court judgment, the City Commission met and increased the water and sewerage rates in order to provide the additional revenues necessary to raise the firemen's minimum wages as well as to raise comparably the pay of all city employees.
However, the ordinance itself shows only that rates were increased. The ordinance does not show that these rates produced sufficient funds for the purpose sought. Assuming that we are permitted to consider the passage of the ordinance for purposes of determining mootness, we may likewise consider the subsequent written complaints of the local firemen (introduced over objection at the appellate hearing) to show that they still have not received the statutory minimum wages.
The appellant individuals are faced with criminal penalties for each day in the past that the minimum wages have not been paid. See LSA-R.S. 33:1997, below-discussed. Further, although to avoid criminal prosecution the plaintiffs may have temporarily complied with the new wagescale, their suit demands a declaration of invalidity of the statutes; should they prevail in their contentions on appeal, the coercive effect of the statute would no longer control the municipal wage-scales. Their appeal is not moot. Archer v. City of Shreveport, 226 La. 867, 77 So.2d 517.
The motion to dismiss the appeal is overruled.
Legal Issues of the Appeal
Without considering other pleadings, the trial court sustained the City's plea of sovereign immunity and dismissed the suit.
(1) The primary issue raised by the appellants' appeal is thus whether the trial court's ruling was correct.
Additionally, however, by timely answer to the appeal certain interveners on behalf of the defendants re-urge an exception of no cause of action filed below. They pray that the affirmance of the suit be dismissed, but upon the different grounds advanced by their exception of no cause of action.
*539 Thus, in addition to the plea of sovereign immunity (above (1)), other substantial issues of this appeal are:
(2) May the interveners pray for dismissal of this suit upon exception of no cause of action, when the individual defendants themselves did not file pleadings requesting this disposition?
If so, then:
(3) Does the petition state a cause of action in its demand that the minimum-pay and vacation provisions of the 1968 statute be declared unconstitutional.
(4) Does the petition state a cause of action in its prayer for a declaration of invalidity or unconstitutionality of LSA-R.S. 33:1997, the penal provisions of an earlier statute (providing criminal penalties for nonpayment of minimum wages)or, at least, is the 1962 statute invalid or unconstitutional insofar as interpreted to apply to nonpayment of the higher wages of the 1968 statute?
(5) Are the individual defendants entitled to an injunction against criminal prosecution under the 1962 statute, if invalid or unconstitutional, or when its application against them is threatened for failure to pay the higher firemen's salaries required by the 1968 statute?
We will take up these issues in the order listed.
1. Plea of Sovereign Immunity
The allegations of the suit claim that certain State statutes are invalid and pray for a declaratory judgment so holding. The State was made a party, so that a copy of the proceedings could be served upon the Attorney General, since LSA-CCP Art. 1880 requires the Attorney General to be served with a copy of proceedings when suit is filed for a declaratory judgment that a statute is unconstitutional.
The State excepted. The trial court sustained the State's contention that the courts are without jurisdiction to hear this suit unless the legislature waived the state's immunity from suit and from liability as provided by Art. III, Section 35, La. Constitution of 1921. Our trial brother was in error in so doing (pretermitting whether the plea was properly raised by an exception to the jurisdiction rather than by an exception of no cause of action).
The cited constitutional provision only requires waiver of immunity where the liability sought to be enforced is historically immune from suit without legislative consent under the judicially-created doctrines recognizing the immunity (which commonly involves torts committed by governmental officers in the performance of purely governmental functions). Hamilton v. City of Shreveport, 247 La. 784, 174 So.2d 529; Toppi v. Arbour, La.App. 1st Cir., 119 So.2d 621, certiorari denied. Historically, however, no waiver is required for suits to enjoin enforcement of unconstitutional legislation or for suits against the State or its agencies to enforce rights granted directly by the constitution. West v. Town of Winnsboro, 252 La. 605, 211 So.2d 665; Carso v. Board of Liquidation of State Debt, 205 La. 368, 17 So.2d 358; Westwego Canal and Terminal Co., Inc. v. La. Highway Commission, 200 La. 990, 9 So.2d 389, 392.
No authority is cited in support of the contention that the consent of the legislature must be obtained before the courts can hear a questioning of the constitutionality of a legislative act. If this contention were sustained, judicial review of unconstitutional acts of the legislature could not occur unless the same legislature which enacted unconstitutional acts, also consented to suit questioning them. To so hold, would deprive citizens of the constitutionally protected rights unless the legislature in its discretion desired to permit the aggrieved parties to invoke them. Such a holding in our opinion would be unsound and is contrary to our constitutional scheme, which provides for checks and balances between the three departments of government, with judicial review being a *540 traditional safeguard against unconstitutional legislative action.
We therefore overrule the State's plea of sovereign immunity. Cf. Abelson's Inc. v. New Jersey State Board of Optometrists, 5 N.J. 412, 75 A.2d 867, 22 A.L.R.2d 929 (1950).
2. Right of Interveners to Urge Exception of No Cause of Action.
A petition of intervention was filed, with court approval, by the Professional Fire Fighters Association of Louisiana, by Local Union 1798 of that labor organization, and by the 12 members of the Natchitoches Fire Department comprising that local. These parties intervened to join with the defendant in resisting the claim of the plaintiffs that the statutes questioned were unconstitutional or invalid.
The interveners filed a peremptory exception of no cause of action to the plaintiffs' petition, praying that the demands of the plaintiffs be dismissed. They also filed an exception of no cause of action praying for dismissal of the plaintiffs' rule for preliminary injunction against enforcement of criminal penalties.
Aside from the State of Louisiana, the defendants in this action are the district attorney, the sheriff, and the committing magistrate (the city judge) of the parish and ward in which the City of Natchitoches is situated. These party defendants never filed any pleadings. It is of course apparent that these individual defendants are without official interest favoring the contentions of either party, being in reality neutral officials awaiting the command of the court as to the validity or not of the minimum-pay provisions and of the criminal sanctions involved.
The trial court overruled the interveners' exceptions of no cause of action. By answer to the appeal, however, the interveners re-urge such exceptions.
The city-appellants contend that the interveners are not entitled to file an exception of no cause of action when the individual defendants did not do so themselves. In so holding, they rely upon the provision of LSA-CCP Art. 1094: "An intervener cannot object to the form of action, to the venue, or to any defects and informalities personal to the original parties."
In so contending, the appellants overlook the essential function of the code provision. This is simply to require an intervener to take the case as he finds it and to prevent him from delaying its determination by raising technicalities or informalities personal to the original parties, by making defenses individual to the original parties which do not go to the merits of his own claim, or by objecting to the "form of the action" or mode of procedure, when the original parties themselves have not done so. Official Revision Comment; and Parish v. Holland, 166 La. 24, 116 So. 580; Cahn v. Ford, 42 La.Ann. 965, 8 So. 477, cited therein.
An objection to the "form" of the action refers to an exception based upon procedural or technical defects in the pleadings, as distinguished from one going to the merits of the claim or existence of a cause of action. See Layman v. Succession of Woulfe, 136 La. 767, 67 So. 823; New Orleans Canal & Banking Co. v. Beard, 16 La.Ann. 344; Holliday v. Logan, 134 La. 427, 64 So. 277; Shields v. Perry, 16 La. 463. "In contradistinction to `substance,' `form' means the legal or technical manner or order to be observed in legal instruments or juridical proceedings, or in the construction of legal documents or processes." Black's Law Dictionary (4th ed., 1951) Verbo "Form." The intervener may raise objections to the existence of the plaintiff's right to a remedy or to his cause of action, even though the defendant does not do so himself, when these objections are an essential part of the intervener's claim, since these objections go to the substance, not the form, of the plaintiff's demand. See *541 Holliday v. Logan, and Shields v. Perry, and New Orleans Canal, etc. v. Beard, cited above.
We find to be distinguishable and not persuasive the decisions allegedly to the contrary relied upon by the appellants: Pringle-Associated Mortgage Corp. v. Eanes, La.App., 197 So.2d 160 (which decision was reversed, 251 La. 711, 206 So.2d 81, which concerned an attempt on appeal to raise the dilatory exception of prematurity personal to the debtor); General Motors Acceptance Corp. v. Jordan, La. App. 1st Cir., 65 So.2d 627 (which concerned an attempt after the judgment to raise certain defenses); Chandler v. Burkhalter, 2d Cir., 10 La.App. 575, 121 So. 353 (intervener claiming only privilege could not interpose defenses personal to the defendant in suit to annul a sale of land, with intervention also dismissed because the intervener did not pray for recognition of his alleged privileges but only asserted defenses of the defendant); cf. also, Cahn v. Ford, 42 La.Ann. 465, 8 So. 477 (intervener could not assert defenses personal to the defendant).
Further, some of the dicta relied upon is inconsistent with and is legislatively overruled by the enlarged right of intervention created by the 1960 Code of Civil Procedure. Under Article 1091 of this new Code, which discarded the stricter tests for intervention establish for the 1870 Code of Practice regulation, a third person who has a justiciable right related to or connected with the object of the personal suit may always enforce that right through intervention to protect himself from prejudice or to avoid circuity or multiplicity of action. Official Revision Comment Article 1091; McMahon, 22 La.L.Rev. 371 (1962); McMahon, 20 La.L.Rev. 298 (1960). Thus, under Article 1091, the third person with the right related to or connected with the object of the pending action (1) may join with the plaintiff in demanding the same or similar relief, (2) may unite with the defendant in resisting the plaintiff's demand, or (3) may oppose both the plaintiff and the defendant. The right to intervene thus enlarged by the 1960 Code contemplates that the intervener may file pleadings and assert defenses independent of those of the original parties, providing only that the right sought to be enforced is related or connected with the object of the principal demand. Bellow v. New York Fire & Marine Underwriters, La.App. 3d Cir., 215 So.2d 350, and authorities therein cited.
For these reasons, we find the present interveners are entitled to file their exceptions of no cause of action, even though the original individual defendants did not do so. (These individual defendants, as earlier noted, are in reality neutral officials rather than partisans for either statutory construction.) It is not contested that if the interveners were entitled to file the exceptions of no cause of action, then they have the same right to question the trial court's overruling it by appeal or answer to the appellant's appeal as would an original party.

3. Constitutionality of Acts 55 and 57 of the Extra. Session of 1968
The city-plaintiffs petition alleges as a cause of action that Acts 55 and 57 of the special session of 1968 are unconstitutional. These allegations form the grounds upon which the first of the plaintiffs' demands are based, a prayer that Acts 55 and 57 be declared unconstitutional.
Act 55 amended and re-enacted LSA-R.S. 33:1992, which had previously last been amended by Act 132 of 1962. The 1968 statute provides for a minimum monthly salary for firemen of $400 per month for firemen (as compared with the $300 monthly minimum provided by the 1962 revision); it further provides for minimum monthly salaries for nine other classifications: engineers, lieutenants, captains, battalion and district chiefs, assistant and deputy chiefs, mechanics, superintendents of fire alarm system (or any other person *542 doing this work), fire alarm operator or dispatcher (or any other person doing this work), and fire inspector.
Act 57 amended and re-enacted LSA-R.S. 33:1996, which had been amended in 1962. Whereas the 1962 statute provides for 15 day annual vacations, the 1968 statute provides for annual vacations of 18 days each year, with longevity increments for each year over ten years service up to a total annual vacation of 30 days for veteran employees.
The city-plaintiffs expressly plead the unconstitutionality of these statutes as offending: (1) Article XIV, Section 40, Louisiana Constitution of 1921 (the "home rule" amendment); (2) Article XIV, Section 15.1 Louisiana Constitution (municipal civil service for fire and police personnel); (3) the equal protection and due process provisions of the federal and state constitutions. The pleadings set forth questions of law as to the constitutionality of the statutes, which may properly be determined on the face of the pleadings, as excepted to by the interveners' objection of no cause of action.
These contentions of unconstitutionality must be rejected. Acts 55 and 57 do not offend the constitutional provisions cited, as follows:
(a) The "Home Rule" Amendment.
The plaintiffs rely upon Section 40 of Article XIV of the state constitution, the "home rule" amendment adopted in 1952. The plaintiffs contend that subsection (d) thereof prevents the state legislature from fixing the wages and vacations of municipal firemen.
Subsection (d) does provide that, in addition to powers expressly conferred upon municipalities, every such body shall have "the additional right and authority to adopt and enforce local police, sanitary and similar regulations, and to do and perform all other acts pertaining to its local affairs * * *." However, this grant of power is expressly made subject to the restriction that "any general laws passed by the legislature shall be paramount and no municipality shall exercise any power or authority which is inconsistent or in conflict therewith." Section 40, subsection (d).
Within the meaning of the Louisiana constitution, Acts 55 and 57 are general laws. A "general" law is one which applies to all persons, places, or things throughout the state or to all persons, places, or things brought within the classification created; as distinguished from a "special" statute, which under its terms operates upon or affects only a portion of the citizens or a fraction of the property within the classification created, and from a "local" law, which operates under its terms only in a particular locality. Knapp v. Jefferson-Plaquemines Drainage Dist., 224 La. 105, 68 So.2d 774; State ex rel. Grosch v. City of New Orleans, 211 La. 241, 29 So.2d 778; Kotch v. Board of River Port Pilot Com'rs, 209 La. 737, 25 So.2d 527; State v. Clement, 188 La. 923, 178 So. 493. See also Comment, General and Special Laws in Louisiana, 16 La.L.Rev. 768 (1956).
Since the home rule provision specifically provides that local municipal administration is subject to any general law passed by the legislature, and since the Acts 55 and 57 are general laws, we must reject the contention that these 1968 acts offend the home rule amendment of our state constitution. The Oregon and Ohio decisions cited in support of a contrary holding are not persuasive, in the light of the Louisiana constitutional provisions and jurisprudence.
(b) Municipal civil service constitutional provision.
The city-appellants further contend that Acts 55 and 57 are unconstitutional because in conflict with the authority granted municipal fire civil service boards by Section 15.1 of Article XIV of the Louisiana Constitution. Specifically, it is claimed that the 1968 legislative act providing *543 for pay for ten different classifications of fire workers violates the provisions authorizing a municipal board to adopt and maintain a classification plan and to make, alter, or amend the rules necessary to carry out the constitutional provision creating municipal fire and police civil service. See Subsections 7(g), (h), and 8. Additionally, appellants contend that the 1968 vacation pay statute, Act 57, violates the constitutional provision providing that the municipal board shall adopt rules to provide for leaves of absence and annual vacations. Subsection 27.
Again, however, this constitutional section also contains the general provision that no municipal fire or police civil service rule, regulation or order shall be "contrary to any other provision of law." Subsection 8. Further, Act 55 does not require the local units to employ personnel in the classifications created; it provides only that, if hired in such classifications, they shall be paid the minimum wages specified. The constitutional provisions regulating municipal civil service nowhere grant the local board exclusive power to fix pay-scales. Likewise, the constitutional provisions directing the local boards to adopt a classification system and to adopt rules to provide for vacations do not, by their terms, prevent the legislature from enacting general laws providing minimum standards, especially in view of the constitutional proviso that municipal civil service rules and regulations shall not be contrary to state law.
The chief restriction upon legislative action is provided by Subsection 38: "This Section [15.1] shall not be rendered ineffective by any general law affecting municipal employees or municipal departments in matters of classified civil service * * *" (with specified exceptions not relevant here). Acts 55 and 57 do not purport to be general laws affecting non-firemen municipal civil service employees. They do not fall within its prohibition, even assuming they rendered ineffective the protections afforded firemen and policemen by the section.
The apparent purpose of Subsection 38 is to prevent general municipal civil service laws from automatically affecting the special civil service systems set up for firemen and policemen by Section 15.1, in the light of attributes peculiar to these latter specialized employments. The specification that such general laws (only those affecting other municipal civil service employees) shall not affect firemen and policemen, implies, in fact, that the legislature may adopt general laws specified as intended to make more effective the aims of municipal civil service protection for firemen and policemen. Inclusio unius est exclusio alterius (To include one is to exclude others). Cf. State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656.
We therefore find that neither Act 55 nor Act 57 offend the municipal firemen's civil service provisions of the state constitution.
(c) Due Process and Other Constitutional Provisions Pleaded.
The city-plaintiffs further plead that the acts violate due process and equal protection provisions of the state and federal constitutions. We recently had occasion to reject similar contentions raised in connection with similar state legislation providing for mandatory municipal appropriations to the local policemen's pension fund. Penny v. Bowden, La.App. 3d Cir., 199 So.2d 345, 351-353. For the reasons there stated, we find the contentions unavailing, however equitable may seem the argument that the state should not require local units to incur certain expenses without at the same time affording them the revenues to pay them.
Insofar as the city officials and city contend as plaintiffs that the firemen's pay statutes constitute an arbitrary and unreasonable discrimination in favor of one class of city employees and against all others, the present plaintiffs, not being in the class allegedly prejudiced, have no standing to assert unconstitutionality on this ground. *544 A person not adversely affected by an unconstitutional feature of a statute has no standing to assert it. State v. Rue, 236 La. 451, 107 So.2d 702; McCauley v. Albert E. Briede & Son, 231 La. 36, 90 So.2d 78.
Other Contentions and Conclusion as to Unconstitutionality of Acts 55 and 57.
In brief on appeal (but not by pleadings below), the appellants suggest other grounds of unconstitutionality. We will not discuss them since not properly pleaded, although if before us, the result we reach would not be changed.
For the reasons set forth above, in conclusion, we find that the interveners' exception urging no cause of action should be sustained as to that demand of the petition praying for a judgment declaring that Acts 55 and 57 of 1968 are unconstitutional or otherwise invalid.
4. Illegality or Unconstitutionality of Criminal Prosecution for Non-compliance with 1968 Pay Statute.
Plaintiffs allege that they are threatened with criminal prosecution and penalties under LSA-R.S. 33:1997, for their failure to comply with the minimum pay and vacation provisions of Acts 55 and 57 of the Special Session of 1968 (which we have held to be constitutional). They contend that LSA-R.S. 33:1997 is unconstitutional, null and void in that it violates Article 1, Section 10, of the Louisiana Constitution, and the due process provisions of Article 1, Section 2, of the Louisiana Constitution, and the Fifth and Fourteenth Amendments of the United States Constitution.
Plaintiffs pray for a declaratory judgment decreeing that LSA-R.S. 33:1997 is unconstitutional, null and void, and that the district attorney, the sheriff, and the committing magistrate (city judge) be restrained and enjoined from arresting or prosecuting them pending these proceedings and until a final determination can be made as to the constitutionality of said statutes.
LSA-R.S. 33:1997, as amended by Act 132 of 1962, provides:
"A. No official or executive officer of any fire department or municipal, parish or fire protection district officer or fire board member affected by this Sub-part shall permit any violation of the provisions of this Sub-part.
"B. Whoever violates this Section shall be fined not less than one hundred dollars for each offense, or imprisoned not less than ten days, nor more than sixty days, or both. Each day the violation is permitted to occur constitutes a separate offense."
One of the grounds urged by plaintiffs for decreeing this section of the Revised Statutes to be unconstitutional is that it is vague and indefinite and that it does not plainly set out a crime. They argue that the statute does not define precisely what acts will be construed as "permitting" a violation of the laws therein referred to relating to minimum salaries, maximum hours, sick leave and annual vacations, and that persons of ordinary intelligence must necessarily guess at the meaning of the statute and they reasonably may differ as to its application. They contend that the statute thus violates the constitutional guaranty of due process of law.
The general rule is that every statute is presumed to be constitutional, and the court is bound to uphold the constitutionality of a statute when it is reasonably possible to do so. Every consideration of public need and public policy upon which the legislation could rationally have been based should be weighed by the court, and the statute should be upheld as being valid and enforceable unless it clearly is inconsistent with provisions of the state or federal constitutions. Michon v. Louisiana State Board of Optometry Examiners, 121 So.2d 565 (La.App.2d Cir. 1960); Police Jury of Parish of St. Charles v. St. Charles Parish Waterworks District No. 2, 243 La. 764, 146 So.2d 800 (1962).
*545 A statute defining a crime and providing a penalty for its violation will be held to be unconstitutional in that it denies due process of law, if the offense is defined in language which is so ambiguous, vague or indefinite that the line between criminal and non-criminal conduct is obscure. State v. Robertson, 241 La. 249, 128 So.2d 646 (1961); State v. Christine, 239 La. 259, 118 So.2d 403 (1960); United States v. Reese, 92 U.S. 214, 23 L.Ed. 563 (1876); State v. Vanicor, 239 La. 357, 118 So.2d 438 (1960). Such a statute will be held to be unconstitutional where the language employed is of such vague and indefinite import that it might embrace many acts which could not possibly have any criminal character, and leaves the discrimination between these and others to arbitrary judicial discretion. State v. Gaster, 45 La.Ann. 636, 12 So. 739 (1893); State v. Truby, 211 La. 178, 29 So. 2d 758 (1947); State v. Vallery, 212 La. 1095, 34 So.2d 329 (1948).
A criminal statute, in order to be valid and enforceable, must define the offense so specifically and exactly that a person having ordinary understanding and intelligence will be able to determine from the language used whether his conduct is or is not denounced as an offense against the law. State v. Murtes, 232 La. 486, 94 So.2d 446 (1957); State v. Bonanno, 245 La. 1117, 163 So.2d 72 (1964); City of New Orleans v. Kiefer, 246 La. 305, 164 So.2d 336 (1964). It is not essential for the validity of a criminal statute that it define each and every way in which a particular crime can be committed. It is necessary, however, that the crucial words and phrases used in the statute have a fixed and definite meaning, so that persons of ordinary intelligence will not have to guess at its meaning and will not differ as to its application. State v. Cloud, 248 La. 125, 176 So.2d 620 (1965); State v. Bonanno, supra.
The United States Supreme Court stated in United States v. Reese, supra, that:
"Laws which prohibit the doing of things and provide a punishment for their violation, should have no double meaning."
* * * * * *
"If the Legislature undertakes to define by statute a new offense and provide for its punishment, it should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime."
* * * * * *
"It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large. This would, to some extent, substitute the Judicial for the Legislative Department of the Government."
In State v. Truby, supra, the constitutionality of a statute which provided a criminal penalty for "keeping a disorderly place" was at issue. The statute defined a disorderly place as "a place to be used habitually for any illegal or immoral purpose." Our Supreme Court held that the statute was unconstitutional, in part, because it was vague and indefinite. In so holding, the court quoted the following language from its earlier opinion in State v. Gaster, supra:
"But when, as in this case, the language employed is of such vague and indefinite import that it might embrace many acts which could not possibly have any criminal character, and leaves the discrimination between these and others to arbitrary judicial discretion, we are bound to hold the statute to be violative of constitutional rules referred to in our original opinion."
The case of Standard Oil Co. of La. v. Porterie, 12 F.Supp. 100 (D.C., E.D. of La., 1935), involved an issue as to the constitutionality of an act which is similar in some respects to the one being considered here. The court, holding that the act was unconstitutional *546 in that it violated the requirements of due process of law, said:
"The statute is susceptible of many interpretations and constructions and is unconstitutional as a penal statute, in that the crime created by it is not definitely described and determined by the language of the act itself, which does not fix an ascertainable standard of guilt. A statute, which requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."
The rule was stated in State v. Bonanno, supra, as follows:
"We are in full accord with the contention made by the defense counsel that a statute should be so definite and specific as to the conduct which is prohibited that a reasonable man will not be compelled to speculate at his peril whether a statute permits or prohibits the act or acts he proposes to undertake. If the language of a statute is so variable, vague, or uncertain that it does not plainly set out a crime, then the statute is a nullity."
The statute which is being attacked in the instant suit provides that none of the officials therein described "shall permit" a violation of the provisions of certain laws, including Acts 55 and 57 of the extra session of 1968. It does not specify the acts which will be construed as permitting such a violation, and we find it difficult, if not impossible, to determine from the language used what acts are denounced as an offense against the law. We think persons of ordinary intelligence will differ in their interpretation of the statute as to the conduct which is prohibited.
For example, what must any executive officer of any fire department, say the fire chief, do so that he will not be subject to criminal penalties? If the City is not paying the minimum standard, is the chief required to attend every meeting of the council to make demands? Must he file a civil suit to require compliance? Would he be guilty if he verbally informed the governing body that he understood their predicament and would not file criminal charges if the city failed to meet the requirements of Acts 55 and 57 of 1968? Would the mayor and members of the city council be subject to criminal charges if they failed to pay the minimum wages of firemen because funds were not available? Would an official or board member of a fire protection district violate LSA-R.S. 33:1997 by voting against one plan for financing the salary raises, although he favored another plan for raising the necessary funds?
These questions make it apparent, we think, that the statute is so vague and indefinite that a person of ordinary understanding and intelligence would find it impossible to determine with any degree of certainty what acts are prohibited. In our opinion, persons at all levels may reasonably differ as to the type of conduct which is denounced by the statute as an offense against the law. We agree with plaintiffs that they should not be required to speculate at their peril whether the statute permits or prohibits the actions they propose to take.
Our conclusion is that LSA-R.S. 33:1997 is so vague and indefinite that it does not plainly and adequately set out a crime and it is not susceptible to a reasonable interpretation. This section of the Revised Statutes thus is unconstitutional, null or void, in that it violates the requirements of due process of law, as provided in Article 1, Section 2, of the Louisiana Constitution, and the Fifth and Fourteenth Amendments of the United States Constitution.
5. Are the City-Appellants entitled to Injunctive Relief?
Plaintiffs pray not only for a declaratory judgment decreeing LSA-R.S. 33:1997 to be unconstitutional, but also for a preliminary injunction to restrain criminal prosecution of them for failure to comply with *547 Acts 55 and 57 of the Extra Session of 1968 pending final judicial determination.
In opposing the injunction, the appellees contend that no injunction should be available unless the plaintiffs can show they are actually threatened with an unconstitutional or illegal enforcement of the injunction against them. West v. Town of Winnsboro, 252 La. 605, 211 So.2d 665; Banjavich v. Louisiana Licensing Board for Marine Divers, 237 La. 467, 111 So.2d 505.
Under the allegations of the petition, however, the city officials are threatened with prosecution under Section 1997 for their failure to pay the 1968 pay-scale due to lack of funds. See Article XIX. For purposes of determining an exception of no cause of action, the allegations of fact are accepted as correct and construed liberally in favor of the petitioner, with the exception to be overruled unless the allegations affirmatively disclose no cause of action. Touchet v. St. Landry Parish Police Jury, 216 So.2d 385 (La.App. 3d Cir. 1968).
Thus, the petition contains factual allegations by reason of which the plaintiff officials may introduce evidence that they are threatened with criminal prosecution under Section 1997 for their failure to pay salaries as established by the later 1968 legislation. They are entitled to injunctive relief against the attempted enforcement of that unconstitutional section of the Revised Statutes. See Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 18 L.Ed.2d 577 (1965).
Conclusions and Decree
Normally, a suit will not be dismissed upon an exception of no cause of action if the allegations set forth a cause of action as to any part of the plaintiff's demand. Bailey v. Texas Pacific Coal and Oil Company, 134 So.2d 339 (La.App. 3d Cir. 1961). As the Bailey case indicates, the exception should thus normally be overruled if any part of the petition can stand against the exception.
On the other hand, when two separate and distinct demands are set out by the petition, an exception of no cause of action may lie to eliminate one, but be overruled as to the other. Succession of Nelson, 163 La. 458, 112 So. 298 (1927); Succession of Curtis, 156 La. 243, 100 So. 412 (1924); Allison v. Aetna Life Ins. Co., 158 So. 389 (La.App. 2d Cir. 1935); Trussell v. Land, 19 La.App. 124, 138 So. 910 (2d Cir. 1932); See also Bailey case, above, at 134 So.2d 340-341. Dean McMahon has discussed this subsidiary rule and the reason for it, distinguishing it from the usual rule that the exception should be overruled if not available as to part (of a demand) of the petition. McMahon, The Exception of No Cause of Action, 9 Tul.L. Rev. 17, 31-32 (1934). See also McMahon, Work of the Louisiana Appellate Courts, 28 La.L.Rev. 385-86 (1963).
Accordingly, we: (1) sustain the intervenor's exception of no cause of action and dismiss the plaintiffs' demand against all parties for declaratory relief that Acts 55 and 57 of the Extraordinary Session of 1968 are unconstitutional or invalid; (2) overrule the exception of no cause of action (a) insofar as it seeks dismissal of the demands for declaratory relief to hold that LSA-R.S. 33:1997 is unconstitutional, null and void; and (b) insofar as it seeks dismissal of the demand for injunctive relief against the attempted enforcement of LSA-R.S. 33:1997. We further overrule the plea of sovereign immunity and exception to the jurisdiction filed by the State of Louisiana.
We thus affirm the trial court's dismissal of the suit insofar as it demands a judgment declaring invalid or unconstitutional Acts 55 and 57 of the Extraordinary Session of 1968; but we reverse the trial court judgment, insofar as it dismissed the demands for declaratory and injunctive relief with regard to the constitutionality and enforcement of LSA-R.S. 13:1997; and we remand this case for further proceedings consistent with the views above expressed. Insofar as legally taxable, the appellants are to pay one-half of the costs of the appeal, *548 the appellees the other half; all other costs to await final disposition of these proceedings.
Affirmed in part, reversed in part.