Dear Representative Smith:
You have asked this office to issue our legal opinion in reference to annual pay raises and annual leave time for firemen of towns with a population of under four thousand (4,000) people.
R.S. 33:1996 governing annual vacation and R.S. 33:1992B governing annual pay raises provide, respectively:
 Firemen in municipalities, parishes and fire protection districts to which this Subpart applies, after having served one year, shall be entitled to an annual vacation of eighteen days with full pay. This vacation period shall be increased one day for each of service over ten years, up to a maximum vacation period of thirty days, all of which shall be with full pay. The vacation privileges herein provided for shall not be forfeited by any member of the department for any cause. Firemen employed on January 6, 1969 shall have their present longevity considered as a factor in the computation of their vacation benefits as provided herein.
 The provisions of this section shall in no way be construed to affect in any manner any presently existing system of computing vacation periods under which greater vacation benefits are granted than those provided for herein and the same shall continue in full force and effect.
* * * * *
 A. The minimum monthly salaries of firemen in municipalities having a population of twelve thousand or more and of all parish and fire protection district paid firemen, including salaries payable out of the avails of any special tax provided by the Constitution of Louisiana for increasing the pay of firemen, shall be in accordance with the following schedule, and such salaries shall be paid semi-monthly not later than the fifth and twentieth day of each calendar month:
 (1) A fireman shall receive a minimum monthly salary of four hundred dollars per month.
 B. From and after the first day of August, 1962, each member of the fire department who has had three years continuous service shall receive an increase in salary of two percent and shall thereafter receive an increase in salary of two percent for each year of additional service up to and including twenty years. Both the base pay and accrued longevity shall be used in computing such longevity pay.
R.S. 33:1996 provides that a covered fireman, after one year of service, is entitled to eighteen vacation days annually with full pay. After ten years, the number of annual vacation days increases one day for each additional year of service, up to a maximum of thirty days per year. SeeNew Orleans Firefighter's Local 632 vs. City of New Orleans, 788 So.2d 1166
(La. 2001). R.S. 33:1992A establishes a minimum monthly salary for firemen of $400, and Section 1992B mandates that every fireman with three years of continuous service shall receive a two percent salary increase for each year of additional service up to twenty years. New OrleansFirefighters, supra, at page 1171.
You specifically ask what avenues are available to require a municipality to comply with these statutes. R.S. 33:1997,[1] which provides criminal penalties against local officers who permit violations of firemen's minimum pay and vacation statutes, was held unconstitutional by the Louisiana Supreme Court in City of Natchitoches vs. State,221 So.2d 534 (La. 1969). The court held:
 LSA-R.S. 33:1997, as amended in 1962 (providing criminal penalties against local officers who permit violations of the firemen's minimum pay statutes), is unconstitutional, null and void, in that it fails to satisfy the requirement of due process of laws provided in Article 1, Section 2, of the Louisiana Constitution, and the fifth and fourteenth amendments of the United States Constitution.
Alternative relief in the form of a writ of mandamus against the local officer(s) involved is available pursuant to Louisiana Code of Civil Procedure Article 3863, providing:
 A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law, or to a former officer or his heirs to compel the delivery of the papers and effects of the office to his successor.
See also Attorney General Opinion, 79-64 copy attached.
Should you have other questions in which we may provide assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams
Date Released: August 28, 2003
[1] R.S. 33:1997 provides:
§ 1997. Penalty for violations
A. No official or executive officer of any fire department or municipal, parish or fire protection district officer or fire board member affected by this Sub-part shall permit any violation of the provisions of this Sub-part.
B. Whoever violates this Section shall be fined not less than one hundred dollars for each offense, or imprisoned not less than ten days, nor more than sixty days, or both. Each day the violation is permitted to occur constitutes a separate offense.
OPINION NUMBER 79-64
March 29, 1979
71-1-1 . . . MUNICIPAL FIRE POLICE CIVIL SERVICE
84 . . . PARISHES
La.R.S. 33:1962, 1963, 1965, 1967, 1969, 1994, 1996, 1997, 1324, 2496, 2500. La. Const. 1974, Art. V § 26, Art. VI § 7.
Fire Dept. regulations relating to firemen working conditions provide for: the local governing authority to exercise reasonable discretion and interpreptation of the meaning of "sufficient number"; a mandatory one captain and one driver per fire fighting apparatus per shift; equal pay for equal responsibility; an ordinance requiring firemen to work shifts alternating the two twenty-four (24) hours platoon shifts to be arbitrary and invalid; eighteen (18) days annual vacation meaning eighteen (18) calendar days; official criminal violations of Title 33, Chapter 4, to be enforced by mandamus; parishes and municipalities to act jointly.
Honorable Senator Don Kelly State Senator State of Louisiana District 31 P.O. Box 756 Natchitoches, LA 71457
Dear Senator Kelly:
In your letter of January 12, 1979 you ask for an opinion from this office for clarification of several statutes contained in Title 33, Chapter 4, Part I of the Louisiana Revised Statutes, entitled: "PROVISIONS RELATING TO BOTH FIRE AND POLICE DEPARTMENT." Specifically, you ask:
 I. What is the meaning of "shall provide a sufficient number of officers and men to carry out the purposes of this subpart" found in R.S. 33:1965?
 II.A. Is the City of Natchitoches in compliance with R.S. 33:1967
at the present time?
II.B. If not, what must be done for it to be in compliance?
 III.A. Are men who have the same responsibilities as regular paid drivers entitled to equal pay under R.S. 33:1969?
 III.B. Can disciplinary action be taken against these men if they should stop driving these vehicles?
 IV. May a firefighter be made to work eight (8) hours a day, seven (7) days a week, fifty-two (52) weeks a year, under R.S. 33:1994?
 V. Does the eighteen (18) days annual vacation required under R.S. 33:1996 mean eighteen (18) working days or eighteen (18) calendar days?
 VI. How can compliance be accomplished should the city of Natchitoches be in violation of any of the above provisions?
 VII.A. Can the paid city firefighters be forced to go into the parish, outside the city limits, and fight fires?
 VII.B. Can the paid city firefighters be forced to drive a parish provided fire truck inside or outside of city limits?
It is the opinion of this office that:
 I.
The meaning of "sufficient number" of officers and men shall be determined by the local governing authority, pursuant to the statutory authority granted in R.S. 33:1965. R.S. 33:1965 entitled "Regulation of Department Working Conditions" provides the following:
 "The governing authority of a municipality shall regulate the fire department, shall provide a sufficient number of officers and men to carry out the purposes of this subpart . . ."
In the execution of the statutory duty created in R.S. 33:1965, the local governing authority must exercise reasonable discretion. Courts will not interfere with the functions of police juries or other public bodies in the exercise of discretionary power vested in them unless power has been abused by acting capriciously or arbitrarily. Jeffries v. PoliceJury of Rapides Parish, App. 1951, 53 So.2d 157. This broad discretionary power permits the local governing authority to select whatever acceptable standard it deems suitable in the determination of what is a sufficient number of firemen for its locality.
For purely exemplary purposes, we direct your attention to one sample acceptable standard which can be used to determine a "sufficient number" of firemen. This standard, which has been given widespread national use, is entitled "The Grading Schedule for Municipalities" and is prepared by the Insurance Service Office (ISO), 160 Water Street, New York City, New York 10038. ISO's Grading Schedule sets up standards for the number of officers and men and the number of companies needed, given the Basic Fire Flow (BFF) requirement of the particular locality. ISO determines the BFF requirement by examining: the number of hazardous buildings in the locality and the number of gallons of water which will be needed to fight the fires of those hazardous buildings; the general fire protection needs of the locality; the running distance to and from a fire; the number of shifts that the fire department has; and the number of firefighting apparatus. The sufficient number of officers and men needed to properly man each company can then be settled in light of the determined BFF.
 II.A.
As you have stated the facts, Natchitoches is not in compliance with R.S. 33:1967. R.S. 33:1967 entitled "Captain of Force" provides in pertinent part:
 "Each force in each fire company shall be in charge of a member of the department holding the rank of captain. By the term force as used herein is meant any single piece of firefighting apparatus."
 ". . . (E) very firefighting apparatus shall be operated by a member of the department holding the rank of engineer or fire driver, by which ever designation he may be known . . ."
If Natchitoches has five pieces of firefighting apparatus, there must be five captains and five drivers to man each firefighting apparatus on each shift. Thus, a fire department which has three shifts per day and five pieces of firefighting apparatus must have a minimum of fifteen (15) captains and fifteen (15) drivers employed. Qualified temporary relief and substitute personnel should be available to replace absentees, consistent with R.S. 33:2496 entitled "Temporary Appointments."
However, be advised that it is the opinion of this office, that the Natchitoches City Fire Department, according to the facts that you cite in your letter, only has four (4) pieces of firefighting apparatus. A tank truck, one of the pieces you included to total five pieces of firefighting apparatus, is not first line firefighting equipment but is only a supplementary unit which does not require a firefighting crew. It is the opinion of this office that the City of Natchitoches has a total of four (4) firefighting apparatus; creating a statutory need of four (4) captains and four (4) drivers, for each shift, or a total of twelve (12) captains and twelve (12) drivers.
 II.B.
R.S. 33:1967 requires a minimum of one captain to be in charge of each single piece of active firefighting apparatus, and a minimum of one driver or engineer to operate each active firefighting apparatus. Currently, the Natchitoches Fire Department has two (2) captains and three (3) drivers on the "A" shift, one (1) captain and three (3) drivers on the "B" shift, and two (2) captains and three (3) drivers on the "C" shift. If Natchitoches has three (3) Fire Department working shifts, and four (4) active firefighting apparatus, there are deficiencies of: two (2) captains and one (1) driver on the "A" shift; three (3) captains and one (1) driver on the "B" shift; and two (2) captains and one (1) driver on the "C" shift. It is the opinion of this office that the Natchitoches Fire Department must supplement their firefighting personnel with seven (7) captains and three (3) drivers to be in compliance with R.S. 33:1967.
Alternatively, should the city of Natchitoches adopt the two (2) platoon Fire Department working shifts, as provided for in R.S. 33:1962
(infra), and maintain four (4) active firefighting apparatus, the fire department would have a deficiency of three (3) captains. The Natchitoches Fire Department currently has a total of five (5) captains and nine (9) drivers. Four (4) captains and four (4) drivers would be required for the "A" shift; and four (4) captains and four (4) drivers would be required for the "B" shift to be in compliance with R.S. 33:1967.
 III.A.
R.S. 33:1969 unequivocally mandates that equal compensation be given for equal performance of duty and responsibilities. Thus Firefighting employees, performing the same duties and responsibilities as regular paid drivers, must receive the same pay as regular paid drivers. R.S.33:1969 entitled "Equal Recognition for Equal Performance" provides the following:
 "Equal recognition and compensation shall be received for equal performance of duty and responsibility."
Furthermore, even if the employee is being appointed as a temporary or substitute appointment pursuant to R.S. 33:2496, the employee is entitled to receive the rate of pay for the class and position in which he is temporarily place. R.S. 33:2496(B), in pertinent part, provides as follows:
 "Any person employed on a substitute basis shall, for the duration of the temporary appointment, enjoy the class title and be entitled to and receive the rate of pay for the class and position in which he is employed."
 III.B.
Disciplinary action against the drivers would be subject to the limitations provided in R.S. 33:2500, entitled "Corrective and Disciplinary Action for Maintaining Service." It is a foregone conclusion, granting the assumption in your third question which states "they have never been ordered to drive the apparatus," that the drivers would not be in violation of the potentially pertinent provisions, contained in R.S. 33:2500(A)(1) or (2), in connection with the conduct of refusing to continue to drive the firefighting vehicle. Absent express orders from the Fire Department to drive the vehicles, these drivers do not have a duty to perform driving services. Hence, these drivers have not failed to perform their "duties" not have they deliberately omitted any act which it was their duty to perform. R.S. 33:2500, entitled "Corrective and Disciplinary Action for Maintaining Standards of Service" provides in potentially pertinent part:
 "(A) The tenure of persons who have been regularly and permanently inducted into positions of the classified service shall be during good behavior. However, the appointing authority may remove any employee from the service, or take such disciplinary action as the circumstances warrant in the manner provided below for any one of the following reasons:
 (1) Unwillingness or failure to perform the duties of his position in a satisfactory manner.
 (2) The deliberate omission of any act that it was his duty to perform."
 IV.
R.S. 33:1994 entitled "Maximum Hours" provides as follows:
 "The maximum hours of work required of firemen covered by this Sub-part in cities having a population of thirteen thousand or more and that of all parish and fire protection district paid firemen in any calendar week shall be sixty hours. However, in case of emergencies, they may be required to work in excess of the maximum hours."
While R.S. 33:1965 (supra) authorizes the governing authority of the municipality . . . to regulate the fire department, the regulation cannot be inconsistent with the general laws of the state; Article VI, Section7, of the Louisiana Constitution of 1974; City of Natchitoches v. State, (supra). The city of Natchitoches, having a (1970) population of 19,000, is subjected to the mandates of the general state laws contained in Title 33, Part I, Section 1941 et sequitur, as established in R.S. 33:1961
which provides as follows:
 "This Sub-part applies to any paid fire department operated by a municipality which has a population of thirteen thousand or more and also firemen paid by any parish or fire protection district."
The general law of the state (in R.S. 33:1962) specifically mandates that the fire department shall be divided into two forces or platoons, one for night service and one for day service. Furthermore, R.S. 33:1963
mandates that the forces shall have alternate twenty-four hour shifts.
R.S. 33:1962 entitled "Day Force and Night Force" provides as follows:
 "The fire department shall be divided into two forces or platoons, one to perform day service and the other to perform night service. The proper authority may transfer a member of the department from one platoon to another for the good of the service."
R.S. 33:1963 entitled "Alternating Shifts; Twenty-four Hours Service" provides as follows:
 "The forces shall alternate. On the day of the shift of forces the day force shall be on duty twenty-four hours. This Section does not apply to the City of New Orleans."
Moreover, in City of Crowley Firemen v. City of Crowley, 280 So.2d 897
(1973), the Supreme Court stated that the municipality's authority to adopt an ordinance is limited to such ordinances which are not "unreasonable or arbitrary in accomplishing its objective"; otherwise the Court will declare the ordinance invalid. In the City of Crowley case the State Supreme Court held that, where city firemen worked twenty-four hours on and twenty-four hours off, an ordinance prohibiting outside employment was an arbitrary and unreasonable exercise of municipal authority and violated the due process provisions of the state and federal constitutions.
Furthermore, the firemen's statutory right to eighteen (18) days of annual vacation, pursuant to the general state law contained in R.S.33:1996 (supra), would be violated by an ordinance which would require firemen to work eight (8) hours a day, seven (7) days a week fifty-two (52) weeks a year. For the reasons discussed above, a municipal ordinance which is inconsistent with the general law(s) of the state or which is "unreasonable or arbitrary in accomplishing its objective" would not stand.
 V.
The eighteen (18) days annual vacation under R.S. 33:1996 means eighteen (18) calendar days. In New Orleans Firefighters AssociationLocal 632 v. City of New Orleans, App. 1972, 260 So.2d 779, writ refused262 La. 187, 190, 262 So.2d 787, 788, affirmed 263 La. 649, 269 So.2d 194, cert. denied, 93 Sup.Ct. 1902, 41 U.S. 933, 33 L.Ed.2d 392, the Supreme Court ruled that the eighteen (18) days annual vacation according to R.S. 33:1996 means eighteen (18) calendar days.
R.S. 33:1996 relating to "Annual Vacation" provides as follows:
 "Firemen, in municipalities, parishes and fire protection districts to which this subpart applies shall, after having served one year, be entitled to an annual vacation of eighteen (18) days with full pay. This vacation period shall be increased one day for each year of service over ten years, up to a maximum vacation period of thirty (30) days, all of which shall be with full pay. The vacation privileges herein provided for shall not be forfeited by any member of the department for any cause."
 VI.
The sixth question in your letter asks about enforcing compliance under R.S. 33:1997 should the City of Natchitoches be in violation of any of the above provisions. Be advised that compliance can not be accomplished under R.S. 33:1997 since it has been held to be unconstitutional, by the Court of Appeal of Louisiana, Third Circuit, (1969) in Natchitoches et alv. State of Louisiana et al, 221 So.2d 534. The court there held that:
 "LSA-R.S. 33:1997, as amended in 1962 (providing criminal penalties against local officers who permit violations of the firemen's minimum pay statutes), is unconstitutional, null and void, in that it fails to satisfy the requirement of due process of law as provided in Article 1, Section 2, of the Louisiana Constitution, and the fifth and fourteenth amendments of the United States Constitution."
R.S. 33:1997 entitled "Penalty for Violation", as (unconstitutionally) amended, provided, as follows:
 "(A) No official or executive officer or any fire department or municipal, parish or fire protection district officer, or fire board member, affected by this subpart shall permit any violation of the provisions of this subpart.
 (B) Whoever violates this section shall be fined not less than $100.00 for each offense, or imprisoned not less than ten (10) days, nor more than sixty (60) days, or both. Each day the violation is permitted to occur constitutes a separate offense."
Thus, alternative relief may be considered. Assuming that a public officer has failed to comply with a "ministerial" duty under the statutes, mandamus may be applied for, pursuant to the Louisiana Code of Civil Procedure, Article 3863.
 VII.A. Paid city firefighters can be forced to go into the parish outside the city limits and fight fires, if the municipality and parish are acting jointly, in the promotion and maintenance of any activity which each local authority may exercise or undertake individually, including fire protection activities, pursuant to the authority granted in R.S. 33:1324
entitled "Grant of Authority to Parishes and Municipalities to Act Jointly." R.S. 33:1324 provides as follows:
 "Any two or more parishes, any two or more municipalities, or any one or more parishes and one or more municipalities may engage jointly in the exercise of any power, the making of any improvement, or the promotion or maintenance of any undertaking which each of the participating authorities may exercise or undertake individually under any provision of general or special law. Such arrangement may include, but are not limited to, activities concerning:
(1) Police, fire, and health protection."
 VII.B.
The authority contained in R.S. 33:1324 (supra) grants the power to the (Natchitoches) municipality to act jointly with the parish or fire protection district for fire protection services.
Very truly yours,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL STATE OF LOUISIANA
 BY: ____________________________ JOHN H. RYAN Assistant Attorney General
JHR:YRO:dkc