230 So.2d 326 (1970)
NEW ORLEANS FIREFIGHTERS ASSOCIATION LOCAL 632, Joseph A. Sanchez and Robert Treadaway
v.
CITY OF NEW ORLEANS, the Council of the City of New Orleans, John J. Petre, Maurice A. Landrieu, Henry B. Curtis, Eddie L. Sapir, Clarence O. Dupuy, James A. Moreau and Philip C. Ciaccio (two cases).
NEW ORLEANS FIREFIGHTERS ASSOCIATION LOCAL 632, Joseph A. Sanchez, Joseph Elton Viola, Louis Truxillo, Charles Sauter, Thomas Kennedy and Maurice S. Cazaubon, Sr.
v.
CITY OF NEW ORLEANS, the Council of the City of New Orleans, John J. Petre, Maurice A. Landrieu, Henry B. Curtis, Eddie L. Sapir, Clarence O. Dupuy, James A. Moreau and Philip C. Ciaccio.
Nos. 3911-3913.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1970.
Rehearing Denied February 2, 1970.
Writ Refused March 12, 1970.
Dodd, Hirsch, Barker, Meunier, Boudreaux & Lamy, C. Paul Barker, Maurice S. Cazaubon, Jr., New Orleans, for plaintiffs-appellees.
Alvin J. Liska, Beuker F. Amann, Jackson P. McNeely, New Orleans, for defendants-appellants.
*327 Ralph D. Dwyer, Jr., New Orleans, for Louisiana Civil Service League as amicus curiae.
Before CHASEZ, HALL and BARNETTE, JJ.
BARNETTE, Judge.
These three suits are companion cases and bear consecutive numbers on the docket of the Civil District Court for the Parish of Orleans and consecutive numbers on the docket of this court. They were consolidated for trial in the district court and are consolidated in this court on appeal. The issues are substantially the same in all three cases.
The plaintiffs are New Orleans Firefighters Association Local 632 in each case and certain named individuals respectively in each of the three cases. In addition to the specifically named plaintiffs the suits are brought as class actions on behalf of all persons similarly situated and having a common interest in the subject matter in litigation.
We will state the object of each suit in the order of its number on the court's docket. The first suit seeks the issuance of a writ of mandamus to compel the City Council of the City of New Orleans to appropriate the necessary funds to implement Act 57 of the Extra Session of 1968 which amends LSA-R.S. 33:1996 to provide increased vacation periods for firemen with pay.
The second suit seeks a writ of mandamus to compel the City Council to appropriate sufficient funds to implement Act 55 of the Extra Session of 1968 amending LSA-R.S. 33:1992 relative to minimum salaries of firemen, and particularly that portion of the act which reads as follows:
"From and after the first day of August, 1962, each member of the fire department who has had three years continuous service shall receive an increase in salary of two percent and shall thereafter receive an increase in salary of two percent for each year of additional service up to and including twenty years. Both the base pay and accrued longevity shall be used in computing such longevity pay." (Emphasis added.)
The foregoing last sentence which we have italicized for emphasis was added by the amending Act 55 of the Extra Session of 1968.
The third suit seeks a writ of mandamus to compel the implementation of that portion of Act 55 which increases the minimum salary schedule for firemen, particularly as it provides for certain named classifications of employees within the New Orleans Fire Department.
After a hearing in which all essential facts were either stipulated or not contested, a judgment was rendered in each case as prayed for by the plaintiffs. The City of New Orleans, acting through the City Council, and the individually named members thereof, appealed.
After argument and submission of the case on appeal, we granted leave to the Louisiana Civil Service League to file brief as amicus curiae.
The City Council, acting for and on behalf of the City of New Orleans, has asserted the defense that the mandates sought to be imposed upon the City pursuant to Acts 55 and 57 of the Extra Session of 1968 are violative of the Constitution of Louisiana and particularly Article 14, section 15, which relates to civil service systems for cities having a population exceeding 250,000, and Article 14, section 22 of the Constitution, commonly called the Home Rule Amendment for the City of New Orleans.
The trial judge overruled certain exceptions which need not be discussed here, and concluded his reasons for judgment as follows:
"Having overruled the exceptions, the Court is unable to do other than to grant *328 the Writs of Mandamus as prayed for by the plaintiffs in the cases.
"The evidence offered by plaintiffs is sufficient to show that the City has not done that which it has been required to do under the provisions of Acts 55 and 57 of the Extraordinary Session of the Louisiana Legislature of 1968, and the defendants have not offered any evidence to refute this fact.
"Hence, that which the defendants, the members of the City Council, are required to do under the provisions of Acts 55 and 57 becomes a ministerial duty which the Court, under the circumstances (and especially in view of the decision in the hereinabove cited Natchitoches case), must compel them by Mandamus to do.
"For the reasons herein stated, there will be Judgment in each of the three cases as prayed for by the plaintiffs."
In City of Natchitoches v. State, 221 So.2d 534 (La.App.3d Cir. 1969) (writs refused by Supreme Court, 254 La. 464, 223 So.2d 870), the plaintiffs, City of Natchitoches, Mayor and City Commissioners, pleaded the unconstitutionality of Acts 55 and 57 as being in violation of Article 14, section 40 (the home rule section for Natchitoches) and Article 14, section 15.1, the civil service section relating to cities of 13,000 to 250,000. The issues raised in that case, therefore, were identical to the issues here except that they are based upon different sections of Article 14 of the Constitution relating to the same subjects. There is some difference in the wording of the sections, and we must first determine if this is such as to justify a different conclusion.
The pertinent portion of the sections on home rule are as follows:
1. For New Orleans:
"The City of New Orleans, in addition to powers expressly conferred upon it by Act 159 of 1912, as amended through the Regular Legislative Session of 1950, shall have the right and authority to adopt and enforce local police, sanitary and similar regulations and to do and perform all of the acts pertaining to its local affairs, property and government, which are necessary or proper in the legitimate exercise of its corporate powers and municipal functions. The City of New Orleans shall, however, not exercise any power or authority which is inconsistent or in conflict with any general law." LSA-Const. Art. 14, § 22 at 151.
2. For the City of Natchitoches:
"(d) The provisions of this constitution and of any general laws passed by the legislature shall be paramount and no municipality shall exercise any power or authority which is inconsistent or in conflict therewith. Subject to the foregoing restrictions every municipality shall have, in addition to the powers expressly conferred upon it, the additional right and authority to adopt and enforce local police, sanitary and similar regulations, and to do and perform all other acts pertaining to its local affairs, property and government which are necessary or proper in the legitimate exercise of its corporate powers and municipal functions." LSA-Const. Art. 14, § 40 at 263.
We agree with the trial judge who found these two sections to have the same meaning. We also agree with our brothers of the Third Circuit who held in the Natchitoches case that Acts 55 and 57 are general laws. See City of Natchitoches v. State, 221 So.2d at p. 542. Since the foregoing constitutional sections relating to home rule expressly limit the municipal authority conferred to the extent that it shall not conflict with general laws enacted by the Legislature, Acts 55 and 57 of the Extra Session of 1968 are not violative of Article 14, section 22, the Home Rule section for the City of New Orleans.
In further attack on the constitutionality of Acts 55 and 57, the appellants contend that they are in conflict with Article 14, *329 section 15 of the Constitution providing a Civil Service System for the City of New Orleans. This issue was pleaded also in the Natchitoches case, but the applicable constitutional provision for the City of Natchitoches is found in Article 14, section 15.1. There is considerable difference between the two sections which we will discuss below. In the Natchitoches case the court discussed the relevant provisions of the applicable section and concluded that the general laws (Acts 55 and 57) were not in conflict therewith. Appellants in this case contend that because of the difference in the constitutional section affecting the City of New Orleans relative to Civil Service the holding of the court in the Natchitoches case is not controlling in this case.
Article 14, section 15 of the Constitution is the source authority for the Civil Service System for all classified employees of the City of New Orleans, and is not limited to firemen or to firemen and policemen. The City of Natchitoches comes under Article 14, section 15.1 which is applicable exclusively to firemen and policemen in municipalities having a population of 13,000 to 250,000. This section is known and cited as "The Municipal Fire and Police Civil Service Law." LSA-Const. Art. 14, § 15.1(2).
Appellants contend that the ultimate authority for the adoption of a pay plan, vacation rights and other conditions of employment for civil service employees of the City of New Orleans, which includes its firemen, is vested in the City Council acting on recommendations of the City Civil Service Commission.
LSA-Const. Art. 14 § 15(I) provides in part as follows:
"(I). Rules and regulations; removal of names from lists; delegation of powers. There is vested in the State Civil Service Commission and in the appropriate City Civil Service Commissions for the several cities respectively the authority and power, after public notice and public hearing, to adopt, amend, repeal and enforce rules which shall have the effect of law, regulating employment, transfers, promotion, removal, qualifications, and other personnel matters and transactions, and employment conditions and disbursements to employees, and carrying out generally in the foregoing respects, and as may be otherwise necessary to that end, the provisions and purposes of Civil Service as herein provided, including, but not by way of limitation * * * (6) establishing and recommending hours of work, provided that the rules establishing the hours of work shall not become effective until approved by the governor or governing body of the city, as the case may be * * *
* * * * * *
"(c) Rules fixing minimum, maximum, and such intermediate rates of compensation as may be necessary, and establishing uniform pay plans and amendments thereof from time to time, according to duties and responsibilities, on the basis of recommendations of the Director after consultation by the Director with appointing authorities and the State or municipal fiscal officer, as the case may be, and resort to such other measures of investigation and research as he may deem desirable. * * * [A]nd a pay plan and amendments thereto for any city shall become effective only after approval by the governing body of said city."
Thus the City Council is the ultimate authority for adoption of a pay plan and related matters for City of New Orleans firemen. The function of the Commission is to recommend. We have held above that the City's authority under its Home Rule powers would have to yield to a general law enacted by the Legislature. We must now determine if the constitutional grant of this special power to the Commission is a restraint or limitation on the City Council's authority and if it is also a limitation on the authority of the Legislature to impose a mandate on the City Council *330 by enactment of a general law affecting its firemen.
The authority of the Municipal Fire and Police Civil Service Board for the City of Natchitoches (cities between 13,000 and 250,000) under "The Municipal Fire and Police Civil Service Law" for such cities relative to duties and rule making is found in Article 14, section 15.1, subsections 7 and 8. A comparison of these subsections with the corresponding section for the City of New Orleans (Article 14, section 15(I)), from which we have quoted pertinently above, discloses that the authority given the "Board" for the City of Natchitoches (and like cities) is not as comprehensive as that given the "Commission" for the City of New Orleans.
While both the "Commission" and the "Board" are given certain duties with respect to rule making, and the adoption of a classification plan for the employees embraced within each system respectively, the authority of the "Board" is more specifically limited to the realm of advisory functions. The "authority and power" given the Commission extends to fixing rates of pay and establishing uniform pay plans for all employees embraced within the system. This difference is the point upon which appellants seek primarily to distinguish this case from the Natchitoches case.
We are aware that the duties of firemen (and policemen) expose them to many dangers and require of them a constant vigil and attendance to duty as protectors of the public, not common to municipal employees in general. For this reason the Legislature may have considered them to be entitled to certain special consideration. Whether or not this was a factor considered by the Legislature in submitting the amendments for approval, we do not know, but it is significant that in cities where the Civil Service System is limited to firemen and policemen the Legislature did not give the local boards authority to adopt rules fixing rates of pay and uniform pay plans, reserving this wholly to itself. But in the City of New Orleans, where all classified employees are under the same system, it is more practical that such authority be vested in the Commission to assure uniformity and an equitable distribution of salary funds among all employees in the several classes of widely divergent skills and responsibilities. However, in vesting the Commission with this broader range of control, the amendment limits the Commission's authority to that of recommending. The ultimate authority to approve and adopt is expressly reserved to the City Council.
A similar matter was considered by us in New Orleans Fire Fighters Ass'n v. City of New Orleans, La.App., 204 So.2d 690 (1967). The question there involved the authority of the City Council to adopt, pursuant to a contractual agreement with the Fire Fighters Association, the number of hours constituting a work week and the mandatory and voluntary hours of overtime work at a premium rate of pay. After the agreement was made, a dispute arose over certain demands for improvements in working conditions, and the City gave notice of a discontinuance of the work week agreement under the pretext of an emergency. The trial court held, and we affirmed, that no emergency existed. Among other defenses urged against a mandamus action to enforce the agreement the City contended that the complaint should have been made to the Civil Service Commission, citing LSA-Const. Art. 14, § 15(I), the pertinent portion of which is quoted above. In substance the City Council was denying its own authority under the amendment to enter into such an agreement. We held the Commission's authority was to recommend, but the authority to approve and adopt the hours of a work week and overtime hours was the ultimate authority of the City Council, and that it could do so even if no recommendation was made.
We cannot distinguish the Council's authority under the same amendment and above-cited section in the matter of pay plans and vacation regulations. We hold, *331 therefore, that since the Council could have exercised this authority on its own initiative without consulting the Commission, it can be compelled to do so by the Legislature through the enactment of a general law. The City's Home Rule authority must yield to the authority of the Legislature for the reasons above stated, provided of course that the general law is not unconstitutional for some other reason.
Act 55 of the Extra Session of 1968 is an act:
"To amend and reenact Section 1992 of Title 33 of the Louisiana Revised Statutes of 1950, to provide with respect to minimum wages and longevity pay to firemen."
and Act 57 of the Extra Session of 1968 is an act:
"To amend and reenact Section 1996 of Title 33 of the Louisiana Revised Statutes of 1950, relative to annual vacations for firemen employed full time by municipalities, parishes and fire protection districts, to provide for an increase in vacation time according to years of service, and to provide further with respect thereto."
Specifically the question is whether the authority of the Legislature to enact these laws has been so limited by the 1952 amendment of Article 14, section 15 that they are not constitutionally applicable to the City of New Orleans.
By Act 171 of 1940 a Civil Service System was established for cities having a population exceeding 100,000 to become effective July 1, 1942. The constitutional authority for this legislative act was provided by Act 381 of 1940, being a Joint Resolution calling for a constitutional amendment to approve, affirm and ratify the act.
Article 14, section 15 of the Constitution was adopted in its present form as an amendment to the Constitution on November 4, 1952. It provides in subsection (P) (6):
"Existing laws. All existing laws relating to the State or City Civil Service System are continued in force insofar as not in conflict herewith, subject to the power of the Legislature to amend or repeal such laws or adopt new laws, provided said amendments or new laws are supplementary and not in conflict herewith."
LSA-R.S. 33:1992 and 1996 were "existing laws" when the amendment was adopted. Therefore, if they "related" to the City Civil Service System and were not in conflict with the amendment, they were continued in force. Thereafter all amendments, including Acts 55 and 57 of the Extra Session of 1968, would have equal force if they were only "supplementary and not in conflict" with the amendment.
It could hardly be denied that the acts "related" to the City Civil Service System, at least indirectly, in that they deal with subjects embraced in its special field of interest and concerning which the Commission is charged with certain duties. They meet the first test in that they are supplementary to LSA-R.S. 33:1992 and 1996 in that they add to or increase the benefits provided by those acts without changing their essential nature or purpose. We must then consider if they meet the test of no conflict with the provisions of Article 14, section 15.
The appellants, supported by the brief of the amicus curiae, have contended that there is conflict with the amendment in that the constitutional authority to fix rates of pay and pay plans for all civil service employees in the City of New Orleans, including firemen, is vested in the City Civil Service Commission. Upon this premise they contend the Legislature was without authority to make the acts applicable to the firemen in the City of New Orleans.
This contention is effectively answered by us in New Orleans Fire Fighters Ass'n v. City of New Orleans, supra. As pointed out above, the City Council, rather than *332 the City Civil Service Commission, has the final authority to adopt pay plans and to regulate employment conditions, including longevity benefits and vacation rights, and the Commission's authority is limited to recommending. Since the City Council could have enacted ordinances to provide the benefits embraced in Acts 55 and 57, with or without the Commission's recommendation, there is no constitutional prohibition against the imposition of the acts in question upon the Council and the City of New Orleans. For the reasons stated above, being general laws enacted by the Legislature, they are not in conflict with the New Orleans Home Rule Amendment and are enforceable in respect to the firemen in New Orleans.
This conclusion is not in conflict with our opinion in Sewerage and Water Board of New Orleans v. Barnett, 225 So.2d 381 (La.App., 1969). That case involved the question of the City Council's authority to adopt a pay plan limited to the employees of one department. We held that a pay plan must apply equally to all positions in the same class and that it could not be limited in application to one department. This would be discriminatory against other employees of the same classes in other departments.
The City Civil Service Commission recommended a "pay plan" for all classified employees. The City Council did not act immediately on the recommendation. However on January 9, 1969, the Sewerage and Water Board (whose employees were included in the plan) approved its adoption retroactive to January 1, 1969, and sought to put it into effect for its employees. The City Civil Service Commission protested saying that only the City Council had authority to approve and put into effect a pay plan. Thereafter on January 30, 1969, the City Council did adopt the pay plan, but only insofar as it applied to the Sewerage and Water Board employees, because, apparently, the Sewerage and Water Board had special funds from which the additional payment could be made. The Commission protested the immediate and retroactive implementation of the recommended revised pay plan in favor of the Sewerage and Water Board employees only.
We held that the City Council had exceeded its authority and said:
"* * * We are satisfied the Council was without authority to approve a portion of a pay plan when such action was in violation of a major intent and purpose of Civil Service as set out above. More particularly, the Council's approval of the plan only insofar as it relates to Sewerage and Water Board employees was in direct violation of the quoted constitutional requirements of one uniform pay plan and the same schedule of pay for all positions in the same class. * * *" 225 So.2d at 384.
This case is distinguishable from the Sewerage and Water Board case in that all employees in the same class will benefit from the implementation of the acts in question. We assume that all firemen and the particular classes of firemen to whom Acts 55 and 57 relate are employees of the Fire Department. In regard to the Sewerage and Water Board, we must assume that it has many employees in classes which are common to many other departments in the city government, such as clerical employees, steno-typists, etc. It was the discrimination against employees in positions of the same class in other departments of the City which we condemned in the Sewerage and Water Board case. We have no such discrimination in this case. The implementation of Acts 55 and 57 of the Extra Session of 1968 will not be discriminatory among employees of the same class, since they are all firemen and all will benefit; therefore, the acts are not prohibited.
For the foregoing reasons, the judgments appealed are affirmed at appellants' costs.
Affirmed.